David DIAZ, Petitioner–Appellant,

v.

Daniel SENKOWSKI, Superintendent,
Clinton Correctional Facility,
Respondent–Appellee.

No. 211, Docket 94–2565.

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 1995.

Decided Feb. 2, 1996.

Michael E. Lipson, Garden City, NY, for Petitioner–Appellant.

Anthea H. Bruffee, Assistant District Attorney, Brooklyn, NY (Charles J. Hynes, District Attorney Kings County, Roseann B. MacKechnie, Assistant District Attorney, Brooklyn, NY, of counsel), for Respondent–Appellee.

Before: KEARSE, WALKER, and CALABRESI, Circuit Judges.

WALKER, Circuit Judge:

Petitioner appeals from a judgment dismissing his habeas corpus petition before the United States District Court for the Eastern District of New York (Charles P. Sifton, Chief Judge). On appeal, Petitioner alleges that the district court erred in finding that Petitioner failed to assert his right to counsel, that Petitioner's confession was voluntary, and that Petitioner was not denied effective assistance of counsel on his direct state appeal.

For the reasons that follow, we affirm.

## BACKGROUND

Petitioner David Diaz was indicted by a Kings County, New York grand jury on four counts of murder in the second degree (two counts of felony murder and two counts of intentional murder). The charges stemmed from the stabbing deaths of a thirty-eight year old woman and her twelve year old son, who interrupted a burglary of their Brooklyn apartment on October 12, 1984. After a jury trial, Diaz was convicted on all counts. On October 21, 1986, he was sentenced to two concurrent terms of imprisonment of twenty-five years to life for felony murder and intentional murder as to each victim, the second two terms to run consecutive to the first two.

### I. Pre–Arrest Questioning

In early October 1985, New York City Police Detectives Powell and Flaherty visited Diaz's residence and informed him that he was a suspect in the murders. Diaz agreed to accompany Powell and Flaherty to the Sixty–Sixth Precinct stationhouse. At the stationhouse, Powell read Diaz his *Miranda* rights, including his right "to consult with an attorney before speaking to the police and to have an attorney present during any questioning now or in the future." Powell also informed Diaz that if he could not afford an attorney, one would be provided to him at no cost. Diaz, who had not yet formally been placed in custody, orally stated that he understood his rights and that he was willing to answer the detectives' questions. Powell and Flaherty questioned Diaz for approximately four hours. During this time, Diaz repeated-

ly denied his participation in the murders. The detectives then asked Diaz for a set of fingerprints and palm prints.

The events which form the basis of this appeal arise out of the following conversation which took place between Diaz and Powell, with Flaherty present, in the stairwell of the stationhouse while en route to fingerprinting:

Diaz: I think I want a lawyer.

Powell: What?

Diaz: Do you think I need a lawyer?

Powell: You have been advised of your rights.[1]

Following this conversation, Powell and Flaherty informed Diaz that they would not speak to him further. Rather, they said they were going to speak to his grandmother. At that point, Diaz grabbed Powell by the arm and told him he wanted to tell Powell what happened. He then began to recount the details of the murders. Diaz's statement was subsequently videotaped by Assistant District Attorney Heslin.

## II. Summary of Proceedings Below

### A. The *Huntley* Hearing

On July 15, 1986, the state trial court conducted a hearing pursuant to *People v. Huntley*, 15 N.Y.2d 72, 78, 255 N.Y.S.2d 838, 843–44, 204 N.E.2d 179, 183–84 (1965), to determine the voluntariness of Diaz's videotaped inculpatory statements. On September 11, 1986, the trial court denied Diaz's motion to suppress on the grounds that he had not invoked his right to counsel and that the police had not infringed his rights by indicating to him that they planned to speak to his grandmother.

### B. The *Habeas* Proceeding

On May 29, 1990, the Appellate Division, Second Department affirmed Diaz's conviction. *People v. Diaz*, 161 A.D.2d 789, 556 N.Y.S.2d 128 (2d Dep't 1990). Leave to appeal the order of affirmance to the Court of Appeals was denied on August 22, 1990. *People v. Diaz*, 76 N.Y.2d 855, 560 N.Y.S.2d 995, 561 N.E.2d 895 (1990). By order dated March 23, 1992, Diaz's motion for a writ of error coram nobis to vacate and set aside the order of affirmance, on the ground of ineffective assistance of appellate counsel, was denied. *People v. Diaz*, No. 91–08038 (2d Dep't 1992).

On January 11, 1994, his state court remedies exhausted, Diaz sought a writ of habeas corpus from the District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 2254. Diaz alleged: (1) the trial court improperly refused his motion to suppress his inculpatory statements which were obtained in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments; and (2) he was denied effective assistance of appellate counsel, in violation of his Sixth Amendment rights. On September 19, 1994, the district court denied Diaz's petition on the strength of the Supreme Court's recent decision in *Davis v. United States*, —— U.S. ——, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Diaz appeals from the judgment entered denying his petition.

We affirm.

## DISCUSSION

Prior to the Supreme Court's decision in *Davis*, the circuits were split over whether ambiguous requests for counsel require cessation of questioning. This circuit, along with the First, Fifth, and Ninth Circuits, held that even an ambiguous request for counsel precludes further interrogation except to the extent necessary to clarify the ambiguity. *United States v. Gotay*, 844 F.2d 971, 975 (2d Cir.1988) ("The trend among circuit courts that have considered the problem ... is to adopt the Fifth Circuit's approach that when a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed

---

1. At trial, Diaz testified that he stated originally: "I want a lawyer" and, in response to Powell's "What?", stated "I think I want a lawyer." On this appeal, Diaz concedes that the conversation was as stated in the text and our discussion proceeds on that basis. The "Do you think I need a lawyer?" statement, rather than the "I think I want a lawyer" statement, is the operative one because the former was followed by Powell's "What?", indicating that Powell did not hear that statement.

to clarify the earlier statement and the suspect's desire for counsel.") (collecting cases). We noted in *Gotay*, however, that the "[Supreme] Court ha[d] not defined ambiguity in this context or ruled on the consequences thereof." *Id.* at 974. The Supreme Court has since ruled on this issue in *Davis*. To the extent that it is in conflict with *Davis*, the *Gotay* decision is no longer the law of this circuit.

■ In *Edwards v. Arizona*, 451 U.S. 477, 484–85, 101 S.Ct. 1880, 1884–85, 68 L.Ed.2d 378 (1981), the Supreme Court held that law enforcement officers must immediately cease questioning of a suspect who clearly asserts his right to have counsel present during custodial interrogation. The *Edwards* Court left open the issue of how law enforcement officers should respond when a suspect makes a reference to counsel that is ambiguous, equivocal, or otherwise insufficiently clear.

In her opinion for the Court in *Davis*, which addressed the issue left open in *Edwards*, Justice O'Connor noted that the law regarding equivocal requests for counsel was unsettled:

[S]tate and federal courts have developed three different approaches to a suspect's ambiguous or equivocal request for counsel:

Some jurisdictions have held that any mention of counsel, however ambiguous, is sufficient to require that all questioning cease. Others have attempted to define a threshold standard of clarity for invoking the right to counsel and have held that comments falling short of the threshold do not invoke the right to counsel. Some jurisdictions ... have held that all interrogation about the offense must immediately cease whenever a suspect mentions counsel, but they allow interrogators to ask narrow questions designed to clarify the earlier statement and the [suspect's] desires respecting counsel.

*Davis*, —— U.S. at ——, 114 S.Ct. at 2353 (quoting lower court's opinion, *United States v. Davis*, 36 M.J. 337, 341 (C.M.A.1993)).

■ The *Davis* Court held that "[i]nvocation of the *Miranda* right to counsel 'requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Id.* at ——, 114 S.Ct. at 2355 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991)). Therefore, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Id.; see also McNeil*, 501 U.S. at 178, 111 S.Ct. at 2209 ("the *likelihood* that a suspect would wish counsel to be present is not the test for applicability of *Edwards*").

■ Diaz asserts that he intended to invoke his right to counsel. While that may well be the case, Diaz failed to express his intent reasonably clearly. Had he done so, his intent would govern. In the absence of such a clear statement, the *Davis* opinion, however, tells us that a suspect's intent is not the controlling factor. If officers had to be guided by speculation as to a suspect's intent, too great a limitation would be put on their ability to obtain information.

■ At various points in its opinion, the Court expressed its concern with the information-gathering function of the police. First, the Court recognized that

when the officers conducting the questioning reasonably do not know whether or not the suspect wants a lawyer, a rule requiring the immediate cessation of questioning "would transform the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity," ... because it would needlessly prevent the police from questioning a suspect in the absence of counsel even if the suspect did not wish to have a lawyer present.

—— U.S. at ——, 114 S.Ct. at 2355–56 (quoting *Michigan v. Mosley*, 423 U.S. 96, 102, 96 S.Ct. 321, 325–26, 46 L.Ed.2d 313 (1975)). Second, it noted that *Edwards* "provides a bright line that can be applied by officers in the real world of investigation and interrogation without unduly hampering the gathering

of information.... [I]f we were to require questioning to cease if a suspect makes a statement that *might* be a request for an attorney, this clarity and ease of application would be lost." *Id.* at ——, 114 S.Ct. at 2356. Third, in reaching its decision, the Court carefully weighed the interests of the state against those of the suspect and concluded:

> We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who—because of fear, intimidation, lack of linguistic skills, or a variety of other reasons—will not clearly articulate their right to counsel although they actually want to have a lawyer present. But the primary protection afforded suspects subject to custodial interrogation is the *Miranda* warnings themselves.

*Id.* Finally, the Court acknowledged that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Id.* However, the Court expressly "decline[d] to adopt a rule requiring officers to ask clarifying questions." *Id.*

▆ Perhaps recognizing that *Davis* requires us to reject his claim of a violation of the right to counsel, Diaz argues that *Davis* is factually distinguishable, in a way that is significant, from his case. We disagree. In *Davis*, the petitioner, like Diaz, initially waived his right to an attorney but later stated: "Maybe I should talk to a lawyer." *Id.* at ——, 114 S.Ct. at 2353. Similarly, in *Davis*, the interviewing agents ceased questioning until they clarified that petitioner was not requesting counsel. *Id.* Contrary to Diaz's suggestion, the fact that *Davis* involved direct review of a conviction by a general court-martial, while this case involves collateral review of a state court conviction, does not take this case outside the scope of the *Davis* rule. The *Davis* Court did not limit its holding to cases involving courts-martial.

▆ Alternatively, Diaz argues that the district judge erred in applying *Davis* retroactively. We reject this claim. *Davis* is simply a clarification of the application of an old principle, namely that absent a request

for counsel, the police need not cease questioning of a suspect. As a result, the principles of retroactivity are not implicated. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) (the requirement that a decision not operate retroactively applies only when the "decision ... establish[es] a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.") (citations omitted).

▆ We can easily dispose of Diaz's two remaining claims. Diaz asserts that the statements he gave to Powell and Assistant District Attorney Heslin were given involuntarily. We evaluate this claim under the "totality of the circumstances" approach set forth in *United States v. Okwumabua,* 828 F.2d 950, 953 (2d Cir.1987) ("There are various factors to be considered in making a determination of voluntariness—they include the type and length of questioning, the defendant's physical and mental capabilities, and the government's method of interrogation."), *cert. denied,* 484 U.S. 1063, 108 S.Ct. 1022, 98 L.Ed.2d 987 (1988). Applying this standard, we conclude that Chief Judge Sifton did not abuse his discretion in finding that the state court record supported a finding of voluntariness. Nor did he err in concluding that the following circumstances, taken together, indicate that Diaz gave his statement voluntarily: (1) Diaz was legally an adult; (2) there was no evidence that Diaz had below-average intelligence; (3) there was no evidence that Diaz was denied food, access to the bathroom, or sleep during his interrogation; (4) Diaz was not beaten, otherwise abused, or even handcuffed; (5) the duration of the interrogation did not by itself establish that the statement was involuntary; and (6) "[t]he threat of speaking to [Diaz's grandmother] is not the type of coercion that, without more, would overbear a normal person's will and cause [him] to confess involuntarily to a double murder."

▆ Because we find that Diaz did not effectively assert his right to counsel and that his confession was not coerced, we reject

**66**

his claim that statements he made to Powell after allegedly asserting his right to counsel were improperly admitted. Finally, Diaz has failed to sustain his burden of proving ineffective assistance of appellate counsel, as set forth by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Chief Judge Sifton did not abuse his discretion in finding that Diaz "failed to show either that counsel's representation fell below a reasonable standard or that there is a reasonable probability that, but for the ineffective counsel, the result of the proceeding would have been different." Whatever deficiencies there may have been in state appellate counsel's performance with respect to counsel's presentation of the issues surrounding Diaz's confessions to Powell and Assistant District Attorney Heslin, they could not have had any bearing on the outcome in view of our conclusion upholding the district court's determination that the right to counsel was not invoked and the confession was not involuntary.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.