**USA v. Plugh**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: September 25, 2008          Decided: July 31, 2009)

Docket No. 07-2620-cr(L), 07-2746-cr(XAP)

_____

United States of America,

*Appellant-Cross-Appellee*,

-v.-

Gordon J. Plugh,

*Defendant-Appellee-Cross-Appellant*.

_____

Before:

JACOBS, WESLEY, and HALL, *Circuit Judges*.

The government appeals from an order of the United States District Court for the Western District of New York (Siragusa, *J.*) entered on June 11, 2007, granting defendant Gordon Plugh's motion to suppress statements made by him on September 28, 2005. Plugh was placed in custody by FBI agents who presented Plugh with a waiver-of-rights form and asked him to sign. After stating he was not sure if he should talk to the agents or if he should contact a lawyer, Plugh refused to sign the form. Subsequently, the agents made remarks to Plugh eliciting inculpatory statements, which the district court suppressed. We hold that under *United States v. Quiroz*, 13 F.3d 505 (2d Cir. 1993), Plugh

was entitled to the prophylactic bar prohibiting police questioning when he refused to sign the form, and we hold that the district court did not commit clear error in finding that the agents violated this prophylactic bar. Furthermore, we note that *Davis v. United States*, 512 U.S. 452 (1994) – which requires that a suspect clearly and unambiguously invoke his rights to regain them after having waived them - does not apply.

AFFIRMED.

Chief Judge Jacobs dissents in a separate opinion.

---

STEPHEN BACZYNSKI, Assistant United States Attorney, *for* Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, Buffalo, New York, *for Appellant-Cross-Appellee.*

JEFFREY WICKS, Rochester, New York, *for Defendant-Appellee-Cross-Appellant.*

---

WESLEY, *Circuit Judge*:

This appeal raises the question of whether a suspect in custody and informed of his rights in accordance with

*Miranda v. Arizona*, 384 U.S. 436 (1966), is entitled to the

prophylactic bar prohibiting police questioning established

in *Edwards v. Arizona*, 451 U.S. 477 (1981) (right to

counsel), and *Michigan v. Mosley*, 423 U.S. 96 (1975) (right

to silence), when he expresses uncertainty with regard to

asserting his Fifth Amendment rights while contemporaneously

refusing to sign a waiver of rights form.  We believe he is

entitled to the prophylaxis and affirm the district court. By unequivocally refusing to sign the waiver form in response to a custodial agent's instruction to sign the waiver form if defendant agreed with it, defendant in this case invoked his Fifth Amendment rights, and therefore his custodial agents were required to refrain from further interrogation.

**Background**

Investigating child pornography possession and internet trafficking, FBI Special Agents Joseph McArdle and James McCaffery visited the home of Gordon Plugh in Rochester, New York, on July 14, 2005. The agents questioned Plugh regarding possession of child pornography on his computer and, upon obtaining Plugh's permission, searched the computer. Upon finding child pornography on the hard drive, the FBI obtained an arrest warrant for Plugh, and five special agents, including McArdle, arrested Plugh at his father's residence in Wayland, New York, on September 28, 2005. Upon handcuffing Plugh, McArdle read Plugh his Fifth Amendment rights and asked Plugh to sign an advice-of-rights

form.[1]

According to McArdle, McArdle asked, "Is that true; are you willing to do that?"  The district court found that McArdle had stated to Plugh that "[i]f you agree with the statement you can sign the form."  *United States v. Plugh*, 522 F. Supp. 2d 481, 487 (W.D.N.Y. 2007).  Plugh stated he understood his rights because he was a former Arizona[2] Department of Corrections officer and according to McArdle stated, "I am not sure if I should be talking to you," and

---

[1] The form contained the following,

YOUR RIGHTS

Before we ask you any questions, you must understand your rights.
You have the right to remain silent.
Anything you say can be used against you in court.
You have the right to talk to a lawyer for advice before we ask you any questions.
You have the right to have a lawyer with you during questioning.
If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present.

[Signature line]

[2] The FBI report, dictated the day of Plugh's arrest, states that Plugh claimed he had worked for the Texas Department of Corrections.

"I don't know if I need a lawyer." Plugh did not sign the waiver and stated that he did not want to sign anything at that time. Agent McArdle wrote "refused to sign" on the form and then signed the form himself. McArdle testified that Plugh's refusal to sign was unequivocal. None of the agents asked Plugh any further questions while in Plugh's father's home.

During the hour-and-fifteen-minute drive to the FBI office in Rochester, the agents transporting Plugh told Plugh he had been arrested because child pornography had been found on his hard drive. According to the FBI report dictated the day after Plugh's arrest and signed by McArdle, Plugh asked the agents several times "for advice on what to do." According to McArdle, the agents stated that they would relay any cooperation made by Plugh to the Assistant U.S. Attorney on the case. The agents then told Plugh that if Plugh wanted to talk about the case, the agents would again advise Plugh of his *Miranda* rights, but also told him that they were not going to talk about the case at that point.

When the agents and Plugh arrived at the FBI office, the agents placed Plugh in a back interview room. They

informed Plugh that they were about to take him to the U.S. Marshals for booking and that "[i]f he wanted to make any statements this was the point . . . ." Plugh then indicated he would make statements, and he was re-advised of his *Miranda* rights. Plugh did not ask for an attorney or indicate he wanted to speak to law enforcement. He then made inculpatory statements regarding downloading and possessing child pornography and admitted to lying to the agents about the existence of a Trojan virus on his computer.

Plugh was indicted on January 11, 2007, under 18 U.S.C. § 2252A(a)(2)(A) (receipt of child pornography) and 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography). Plugh moved to suppress his July 14, 2005, and September 28, 2005, statements to the FBI, as well as physical evidence seized on July 14, 2005. Plugh argued that his statements were "involuntary, the product of coercion and violative of the right to counsel." The United States District Court for the Western District of New York (Siragusa, *J.*) denied the motion to suppress the July 14 statements and physical evidence but granted the motion to suppress the September 28 statements. *Plugh*, 522 F. Supp. 2d at 493-96. The district

court held that Plugh's refusal to sign the waiver form was an "unequivocal" invocation of Plugh's right to counsel and to remain silent, and that suppression of Plugh's statements was proper because the officers did not scrupulously honor Plugh's rights when they "repeatedly [told Plugh] that any cooperation would be brought to the attention of the AUSA and by telling [Plugh] that he was about to be taken to the Marshal's office." *Id*. at 496. The district court noted that even if Plugh "invoked his right to counsel and his right to remain silent equivocally or ambiguously . . . suppression [was] nonetheless required since [the agents], at least as to the defendant's right to remain silent, failed to limit themselves to narrow questions only for the purpose of clarifying the ambiguity, as required by this Circuit" under *United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir. 1996). *Plugh*, 522 F. Supp. 2d at 495-96 (internal quotation marks omitted).

On appeal the government acknowledges that Plugh "was clear he did not wish to sign anything," including the waiver, at the time he was arrested at his father's home. Regardless of that acknowledgment, the government contends that Plugh's invocation of his Fifth Amendment rights was

not "unequivocal and unambiguous."  The government constructs its argument on the language the Supreme Court employed in *Davis v. United States*, 512 U.S. 452 (1994).

We are called upon to determine whether Plugh retained his right to remain silent[3] and his right to counsel by refusing to sign the advice-of-rights form when asked by Agent McArdle to sign the form if he agreed with its contents, notwithstanding his statements immediately prior that he was not certain he wanted to talk to a lawyer or that he should talk to the interrogating agents. As we see it, we must answer two questions: (1) whether Plugh's refusal to sign the waiver form in this context was an invocation of his Fifth Amendment rights; and (2) if yes, whether the agents, subsequent to Plugh's refusal to sign

---

[3] We note that in his motion to suppress the September 28, 2005, statement Plugh limits his argument to a claim that the statements were taken in violation of his right to counsel.  The district court appears to have dealt with this issue and with Plugh's right to remain silent. *See Plugh*, 522 F. Supp. 2d at 496.  The government does not contend that the district court erred in this respect and asks us to analyze the right-to-remain-silent issue for its substance. The refusal to sign the waiver calls into question whether Plugh invoked either right, and we will consider both. However, our dissenting colleague seems to view the case, without any explanation, as a right to counsel case only and implies that makes a difference here.  *See* Dissenting Op. at 5-6.

the waiver form, properly complied with the prophylactic rules requiring the police to refrain from questioning. We find that the prophylactic rules were applicable to Plugh and that the agents did not properly abide by those rules.[4] We therefore affirm the district court's order suppressing the September 28, 2005, statements.

**Discussion**[5]

**I. Whether Plugh Invoked His Fifth Amendment Rights**

   **A. The Fifth Amendment's Protections**

A suspect cannot be required to incriminate himself. U.S. CONST. amend. V. Encapsulated in this protection are certain well-known rights: (1) the right to remain silent; and (2) the right to an attorney, either appointed or retained. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

---

[4] There is no need to evaluate the district court's alternative ruling that suppression was required because the officers did not confine themselves to clarifying questions upon Plugh's purported ambiguous invocation. Neither must we determine the validity of Plugh's waiver at the time of his interrogation in Rochester.

[5] When evaluating a district court order granting a motion to suppress, this Court reviews findings of fact for clear error in the light most favorable to the government and reviews questions of law *de novo*. *Rodriguez*, 356 F.3d at 257.

More than forty years ago, the *Miranda* Court noted that the prosecution may not use statements made by a suspect under custodial interrogation unless: (1) the suspect has been apprised of his Fifth Amendment rights; and (2) the suspect knowingly, intelligently, and voluntarily waived those rights. *Id.* at 444-45. The Supreme Court in the years following *Miranda* fleshed out the judicial mechanisms for ensuring the viability of these constitutional protections. Included among them is the principle that "courts must presume that a defendant did not waive his rights," *North Carolina v. Butler*, 441 U.S. 369, 373 (1979), until the government proves otherwise by a preponderance of the evidence, *Colorado v. Connelly*, 479 U.S. 157, 169 (1986). Put differently, unless the suspect validly waived his rights, we presume he retains them.

Cases in this area of the law are fact intensive because of the number of combinations of: (1) the circumstances preceding a suspect's interrogation; (2) the method and manner by which a suspect is informed of his or her *Miranda* rights; and (3) the timing of the suspect's invocation – at the time he receives the warnings or later

during the interrogation following an initial waiver.[6]

To honor a suspect's Fifth Amendment rights, custodial officers must abide by several prophylactic rules designed to protect the Fifth Amendment rights that come into play once the suspect is in custody. "Under *Miranda*'s prophylactic protection of the right against compelled self-incrimination, any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right." *Montejo v. Louisiana*, 129 S. Ct. 2079, 2089 (2009).

There are additional layers of prophylactic protection. Once a suspect invokes his Fifth Amendment rights he is entitled to a second layer of prophylaxis that has its roots in *Edwards v. Arizona,* 477 U.S. 477 (1981). "Under *Edwards'* prophylactic protection of the *Miranda* right, once such a defendant has invoked his right to have counsel present, interrogation must stop." *Montejo*, 129 S. Ct. at 2098-90 (internal quotation marks omitted). Likewise, if the suspect initially decides after receiving the warnings that he wishes to remain silent, the custodial officers must

---

[6] It is entirely possible, and is often the case, that someone will not invoke their rights.

"scrupulously honor[]" his "right to cut off questioning." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975).

An exception to the rule occurs when it is not clear from a suspect's statements or conduct whether he is asserting his rights. In such cases, custodial officers may ask clarifying questions to determine if a suspect is exercising his rights. *See Ramirez*, 79 F.3d at 304. But because the default presumption is that a suspect retains his rights and the burden is on the government to prove otherwise, custodial officers who press on with questioning assuming that a suspect's statements or conduct are *not* indications of the suspect's desire to retain his Fifth Amendment rights do so at the risk of suppression of the suspect's subsequent statements.

**B. Law Applicable to Determining If Plugh Invoked His Fifth Amendment Rights**

In this case, the agents presented Plugh with a waiver form and no one disputes that Plugh refused to sign it. What then are the implications of Plugh's refusal?

In *United States v. Quiroz*, this Court addressed whether refusal to sign a waiver form may constitute an invocation of a suspect's Fifth Amendment rights. 13 F.3d

505 (2d Cir. 1993).  There, the custodial officer "asked [suspect] Quiroz to read the advice-of-rights forms, asked whether he understood the forms, and simply asked Quiroz to sign them."[7]  13 F.3d at 512.  Quiroz "declined to sign until he had spoken to an attorney."  *Id.* at 509.  Finding that the "statement was a direct and complete response to the precise question Quiroz had been asked," the Court determined that the prophylactic requirement that custodial officers refrain from questioning was triggered at that moment.  *Id.* at 512.  The *Quiroz* Court had

> no doubt whatever that, had Quiroz signed, [the custodial officer] would have viewed that act as a complete waiver of Quiroz's rights. We can see no good reason not to treat Quiroz's refusal to sign forms in the absence of counsel as a refusal that was coextensive with the waiver [the custodial officer] sought.
>
> In sum, we do not view Quiroz's refusal to sign the forms as a limited request for counsel, any more than [the custodial officer's] request to sign the forms was a request for a limited waiver. Since we do not view Quiroz's statement as narrower than the [custodial officer's] request, we see no ambiguity.

*Id.*

---

[7] The custodial officer in *Quiroz* testified: "After I had asked him if he understood [his rights], I said, would you mind just signing these?  He said, I—Before I sign anything, I want to speak to my attorney.  Okay, I took them back."  *Quiroz*, 13 F.3d at 509 (alteration in original).

Quiroz instructs us, therefore, that – absent a suspect's *prior or simultaneous* "affirmative announcements of his willingness to speak," *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987) – when a custodial officer specifically asks a suspect if he will waive his rights by signing a form and does so in such a way that the accused would interpret a refusal to sign as a negative answer, the suspect has taken sufficient action to trigger the *Edwards* prophylactic rule and the officers must refrain from questioning the suspect.[8]

**C. Did Plugh Iinvoke" His Fifth Amendment Rights?**

Under *Quiroz*, the question is whether Plugh's actions – a refusal to sign the advice-of-rights form in light of the agent's question "Is that true; are you willing to do that?"

---

[8] The dissent apparently assigns no value to the agents' statements to Plugh upon presenting him with the waiver form.  This omission is ironic in light of the dissent's insistence that "courts must look to all of the circumstances surrounding a purported invocation," Dissenting Op. at 5 (citing *Davis v. United States*, 512 U.S. 452, 458-59 (1994)), and that the "cases support the overall principle that the circumstances matter, and that refusal to sign a waiver form is a sign that is informed by context." Dissenting Op. at 9.  Concomitantly, the dissent ignores the emphasis placed on context by this Court in *Quiroz*, in which we found that under the facts of that case, a suspect's "statement [refusing to sign] was a direct and complete response to the precise question Quiroz had been asked." *Quiroz*, 13 F.3d at 512.

following his statements "I am not sure if I should be talking to you," and "I don't know if I need a lawyer" – were an invocation of his rights.

While Plugh's statements, "I am not sure if I should be talking to you" and "I don't know if I need a lawyer," appear ambiguous, Plugh's ultimate action – his refusal to sign – constituted an unequivocally negative answer to the question posed together by the waiver form and McArdle, namely, whether he was willing to waive his rights. McArdle's direction to Plugh that "[i]f you agree with the statement you can sign the form," *Plugh*, 522 F. Supp. 2d at 487, makes the meaning of Plugh's response less ambiguous than the defendant's refusal to sign in *Quiroz*, where the officer simply asked "would you mind just signing these?" *Quiroz*, 13 F.3d at 509. Plugh's answer in this context, under *Quiroz*, amounts to an invocation, and that is where the inquiry ends.[9] Because Plugh invoked his rights, the

---

[9] The dissent asserts that Plugh's refusal to sign "is fully as consistent with uncertainty as with rejection." Dissenting Op. at 7. However, the language of the written waiver is clear, and we hear no objection in that regard from the dissent – a signature represents a waiver of one's *Miranda* rights. The government in its brief acknowledges that Plugh's refusal was clear and unequivocal and never suggests, as the dissent does, that the refusal could in

custodial officers should have refrained from reinitiating the interrogation, and all subsequent statements made by Plugh were properly suppressed.[10]  *See* Part II., *infra*.

**D. Applicability of *Davis v. United States***

The government, looking to language in *Davis v. United States*, 512 U.S. 452 (1994), takes the view that an initial invocation of one's Fifth Amendment rights such as Plugh's must be unambiguous and that the ambiguity is resolved against Plugh.  The government argues that Plugh did not unambiguously invoke his rights and that therefore, the agents were free to continue to question him.  This view seriously misunderstands the sweep of *Davis*.[11]

---

fact indicate uncertainty on Plugh's part. See Appellant's Br. at 8.  Instead, the government asserts that ambiguity in Plugh's statements casts doubt on a conclusion that the invocation considered under the circumstances as a whole was clear and unambiguous.  Lastly, the district court characterized Plugh's refusal to sign the waiver as "unequivocal." *Plugh*, 522 F. Supp. 2d at 493-96.

[10] We do not believe that this holding will deter police from using waiver forms, as the dissent fears.  The testimony of the parties present – the custodial officer and the suspect – will often conflict with regard to what was said at the time the suspect was read his *Miranda* rights.  Police officers recognize this and understand that a written waiver avoids this type of conflict.

[11] As noted earlier, if the invocation was ambiguous, which it was not, then the agents could have proceeded to

In *Davis*, the Supreme Court held that if a defendant validly waives his Fifth Amendment rights initially and then *thereafter* attempts to invoke those rights, the defendant bears the burden of showing that the invocation was unambiguous and unequivocal to trigger the prophylaxis rules. *Davis*, 512 U.S. at 460-62; *accord Diaz v. Senkowski*, 76 F.3d 61, 65 (2d Cir. 1996). *Davis* does not instruct courts how to analyze an *initial* invocation of one's Fifth Amendment rights following the *Miranda* warnings where no waiver occurred. In our view, *Davis* only provides guidance for circumstances in which a defendant makes a claim that he *subsequently* invoked previously waived Fifth Amendment rights.

In order to use statements made by a suspect without counsel present while under custodial interrogation, the burden is on the government to prove the suspect waived his rights. *See Connelly*, 479 U.S. at 169. Once the government has met its burden, the *suspect* has the burden of proving that he resurrected rights previously waived. The invocation must be unambiguous and unequivocal. "To avoid

question Plugh but only in an attempt to resolve the ambiguity. *See Ramirez*, 79 F.3d at 304.

difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry." *Davis*, 512 U.S. at 458-59.

The Court fashioned the rule to avoid "transform[ing] the *Miranda* safeguards into wholly irrational obstacles to legitimate police investigative activity."  *Id.* at 460 (internal quotation marks omitted).  The rule ensures that a suspect does not use the Fifth Amendment as a sword – to excise unfavorable evidence – after discarding it as a shield.

The *Davis* Court was careful to note that only "*after a knowing and voluntary waiver* of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney."[12]  *Davis*,

_____

[12] In *United States v. Rodriguez*, the Ninth Circuit noted that "*Davis* addressed what the suspect must do to *restore* his *Miranda* rights after having already knowingly and voluntarily waived them."  518 F.3d 1072, 1079 (9th Cir. 2008) (emphasis in original).  The *Rodriguez* court correctly noted that "the majority of state supreme [and intermediate] courts to consider the issue have" also concluded that *Davis*'s ambiguous statement requirement was limited to the post-waiver context.  *Id.* at 1079 n.6.  One other federal court has noted that *Davis* should be seen as a post-waiver case, but did not analyze its application to pre-waiver scenarios.  *See United States v. Eastman*, 256 F.Supp.2d 1012, 1019 (D.S.D. 2003).

512 U.S. at 461 (emphasis added); *see also id.* at 459 (noting that an ambiguous reference to an attorney would not compel the "*cessation* of questioning") (emphasis added); *id.* (noting that a "statement [that] fails to meet the requisite level of clarity . . . does not require that the officers *stop* questioning the suspect") (emphasis added); *id.* (declining to extend *Edwards* to require officers to "*cease* questioning" upon an equivocal statement by a suspect) (emphasis added). Clearly, *Davis* is not in play here.

**II. Whether the agents properly honored Plugh's rights after invocation**

Plugh invoked his Fifth Amendment rights to counsel and silence. "[W]hen counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990). Should the suspect "decide[] to remain silent," the custodial officers must "scrupulously honor[]" that decision. *Mosley*, 423 U.S. at 104.

An officer interrogates "'whenever a person in custody is subjected to either express questioning or its functional equivalent.'" *United States v. Montana*, 958 F.2d 516, 518

(2d Cir. 1992) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980)). "Interrogation includes both express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.* (quoting *Innis*, 446 U.S. at 301). In *Montana*, this Court determined that an officer's "unsolicited statement informing the defendant[] that any cooperation would be brought to the attention of the Assistant United States Attorney constituted interrogation." *Id.* at 518-19 (internal quotation marks omitted). And in *Campaneria*, we concluded that an officer who stated "If you want to talk to us, now is the time to do it" had thereby committed "precisely the sort of conduct the prophylactic rule seeks to prevent." *Campaneria*, 891 F.2d at 1021.

The district court found that the agents "repeatedly [told] the defendant that any cooperation would be brought to the attention of the AUSA" as well as told Plugh "that he was about to be taken to the Marshal's office, so that if he wanted to make any statements this was the time." *Plugh*, 522 F. Supp. 2d at 496. We see no clear error in these

findings of fact.  The district court concluded that the agents' conduct constituted impermissible interrogation and, after reviewing this question of law *de novo*, we agree.

The dissent presses for a reversal premised on the "ambiguity" of Plugh's waiver. It acknowledges that under *Ramirez*, 79 F.3d at 304, "the police may ask questions to clarify whether the suspect in fact wishes to invoke, or to waive" in right-to-remain-silent cases.  However, the dissent goes on to note that *Davis* is less restrictive because it "specifically declined to limit police to clarifying questions in [right-to-counsel cases]." Dissenting Op. at 5.

The dissent overlooks an important part of the district court's opinion.  The district court held that notwithstanding whether Plugh's statements were ambiguous – and regardless of the significance of Plugh's refusal to sign the waiver form under *Quiroz*, 13 F.3d at 511 – "suppression is . . . required since [the agents], at least as to the defendant's right to remain silent, failed to limit themselves to narrow questions only for the purpose of clarifying the ambiguity, as required by [*Ramirez*]."  *Plugh*, 522 F. Supp. 2d at 495-96 (internal quotation marks

omitted).

The dicta in *Davis* suggesting that police need not limit themselves to clarifying questions in that case made sense in that case, but makes no sense at all here. In *Davis*, the officers did not have to limit their questions to resolving an ambiguity of defendant's attempt to *reassert* his Fifth Amendment rights as the police were not bound to cease questioning *until* Davis unambiguously reasserted his rights. In situations where no waiver has occurred, the police must clarify whether an ambiguous statement is meant as an invocation because "*Edwards* set forth a bright line rule that *all* questioning must cease after an accused requests counsel." *Smith*, 469 U.S. at 98 (citation omitted and italics in original).

## Conclusion

This is a case about whether a suspect invoked his Fifth Amendment rights in the absence of any waiver. *Davis* is a case about the steps a suspect must take to demonstrate that he wishes to resurrect and invoke previously waived rights. In the context of the facts of this case, Plugh's refusal to sign the waiver document was an invocation of his rights and entitles him to *Edwards* prophylaxis. The agents

were not permitted to question him.

The district court's order of June 11, 2007, granting defendant's motion to suppress his statements made on September 28, 2005, is hereby AFFIRMED.

Dennis Jacobs, <u>Chief Judge</u>, dissenting:

When, after <u>Miranda</u> warnings, a suspect is undecided as to whether a lawyer is wanted, or responds ambiguously, the police may renew that inquiry. <u>See</u> <u>United States v. Ramirez</u>, 79 F.3d 298, 304 (2d Cir. 1996) ("[W]here a suspect has invoked his right equivocally or ambiguously, the officers are permitted to ask narrow questions only for the purpose of clarifying the ambiguity."). The issue on this appeal is whether the police are barred from renewing the inquiry if the suspect who says he is undecided also refuses to sign a written waiver of <u>Miranda</u> rights. The majority holds that such a refusal to sign a written waiver operates as an invocation of <u>Miranda</u> rights and thus precludes any further inquiry by police to resolve the uncertainty. However, because the refusal to sign a waiver is wholly consistent with the expression of uncertainty, I respectfully dissent.

**I**

When the government appeals from the suppression of evidence, we review the district court's factual findings

1

for clear error, viewing the evidence in the light most favorable to the government.  United States v. Rodriguez, 356 F.3d 254, 257 (2d Cir. 2004).  Given that standard, the facts are as follows:

After the FBI agents arrested Plugh, the agents read him his Miranda rights, asked him to sign a written waiver, and inquired orally whether he was willing to waive.  Plugh said he was not sure whether he wanted to talk to the agents, and said he did not know whether he needed a lawyer.  He was certain, however, that he did not want to sign the waiver form, and the agents recorded his refusal to sign.

On the hour-long trip to the federal building in Rochester, the agents told Plugh that while they "didn't care" whether he talked to them, they would relay any cooperation to the prosecutor.  Plugh asked what cooperation meant, but the agents told Plugh that they could make no promises, that Plugh should say nothing to them about his case, and that they would only discuss the case if Plugh explicitly waived after again being read his rights.  The agents asked no substantive questions during the drive to Rochester.

On arrival in Rochester, the agents told Plugh that

2

they were going to transfer him to the custody of the United States Marshals and that if he wanted to make a statement, the time had come to do so. Thereupon, Plugh said that he would make a statement; the agents again gave <u>Miranda</u> warnings; Plugh signed a written waiver of his rights; and the inculpatory statement at issue was made.

**II**

Police may not use statements made by a suspect under custodial interrogation unless the suspect is apprised of his Fifth Amendment rights, and waives them knowingly, intelligently, and voluntarily. <u>Miranda v. Arizona</u>, 384 U.S. 436, 444-45 (1966). If he invokes his right to counsel, police must cease questioning until the suspect has an attorney present. <u>Miranda</u>, 384 U.S. at 474; <u>Edwards v. Arizona</u>, 451 U.S. 477, 485 (1981). If he waives, police may go ahead with questioning. <u>Davis v. United States</u>, 512 U.S. 452, 458 (1994).

Did Plugh's refusal to sign a waiver constitute an invocation of his rights notwithstanding his simultaneous oral statement that he didn't yet know whether he wanted a lawyer or whether he should talk to the agents? To

effectively invoke the right, a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, 512 U.S. 452, 459 (1994). This inquiry--whether a suspect has in fact invoked his rights-- is an objective one that takes into account all of the circumstances. Id. at 458-59.

Plugh's oral statements to the agents at the time of the arrest--"I am not sure if I should be talking to you" and "I don't know if I need a lawyer"--were equivocal, rendering his decision ambiguous.[1] If the record showed no more than these statements, the case would be straightforward; Plugh would lose. The only wrinkle is that (simultaneously) Plugh refused to sign a written waiver of

---

[1] Examples of ambiguous statements abound. See Davis, 512 U.S. at 462 ("Maybe I should talk to a lawyer"); Burket v. Angelone, 208 F.3d 172, 198 (4th Cir. 2000) ("I think I need a lawyer."; United States v. Zamora, 222 F.3d 756, 765-66 (10th Cir. 2000) ("I might want to talk to an attorney."); Mueller v. Angelone, 181 F.3d 557, 573-74 (4th Cir. 1999) ("Do you think I need an attorney here?"); Coleman v. Singletary, 30 F.3d 1420, 1424-25 (11th Cir. 1994) (in response to an offer to have a public defender present,"I don't know"); Ledbetter v. Edwards, 35 F.3d 1062, 1069-70 (6th Cir. 1994) ("it would be nice" to have an attorney); United States v. Fouche, 776 F.2d 1398, 1405 (9th Cir. 1985) ("I might want to talk to a lawyer").

4

his rights.

Davis instructs that courts must look to all of the circumstances surrounding a purported invocation to determine whether it was unambiguous. Davis, 512 U.S. at 458-59. All of the circumstances here--Plugh's oral statements as well as his refusal to sign a waiver--bespeak indecision and ambiguity.

When a suspect makes ambiguous statements regarding his right to silence, we have held that the police may ask no questions other than to clarify whether the suspect in fact wishes to invoke, or to waive, or to stay on the fence. Ramirez, 79 F.3d at 304. Ramirez (a right-to-silence case that pre-dated Davis) was thus more restrictive than Davis (a right-to-counsel case), which specifically declined to limit police to clarifying questions in such circumstances.[2] Davis 512 U.S. at 461-62.

---

[2] The majority suggests that Davis's refusal to limit police makes sense because Davis (they contend) applies only to re-invocations, when a suspect must state his desire unambiguously. As discussed *infra* in Part III, Davis is not limited to re-invocation cases, but instead applies to any invocation of Miranda rights. In any case, the very intricacy of the majority's argument is self-refuting: the purpose of the suppression rule is to keep the police honest, a project that requires that the doctrines governing police conduct be accessible to persons other than professors of constitutional law.

If, as the majority opinion seems to suggest, the agents categorically violated the Ramirez rule by telling Plugh that his cooperation would be relayed to the prosecutor and that "this was the point" to talk, then suppression is justified on that basis alone.  Maj'y Op at 9 n.4, 17 n.11, 22-24.  But if that were so, suppression would be warranted regardless of whether Plugh's statements were ambiguous, in which case all the rest of the majority opinion would be unnecessary.  But the majority opinion is not superfluous, because--even if the Ramirez rule survives Davis--the agents *did* limit themselves to clarification.

The majority cites the following cases to suggest that the sorts of statements the agents made here constitute inappropriate interrogation in violation of the Ramirez rule: United States v. Montana, 958 F.2d 516, 518 (2d Cir. 1992) (statement informing the defendants that any cooperation would be brought to the attention of the prosecutor); Campaneria v. Reid, 891 F.2d 1014, 1021 (2d Cir. 1989) (statement suggesting that "now is the time" for suspect to talk to police).  But these cases--unlike Ramirez--involve statements made by police officers after the suspect had unambiguously invoked his rights.  In such

6

cases, statements such as these serve only to badger the suspect to change his mind. See Campaneria, 891 F.2d at 1021 (since "[n]othing was ambiguous or equivocal" about suspect's invocation, officer's remark "was not aimed at resolving any ambiguity in [suspect's] statement, but rather at changing his mind"). But if a suspect has not clearly invoked his rights, then an offer to relay his cooperation to the prosecutor and words of encouragement to make up his mind serve primarily to clarify his initial ambiguous statement. The agents' conduct was accordingly free of any misconduct or error. For these reasons, I would admit Plugh's incriminating statement.

**III**

The majority opinion holds that the ambiguity of Plugh's statements was dispelled by his refusal to sign the written waiver--which is said to be his final answer to the question whether he wished to waive his Miranda rights. Maj'y Op at 16. This is odd, because a refusal to sign is fully as consistent with uncertainty as with rejection. But the majority opinion suggests that the question is controlled by our decision in United States v. Quiroz, 13

7

F.3d 505 (2d Cir. 1993). In Quiroz, the suspect said he would not sign the waiver (or anything) *without talking to a lawyer*. Id. at 509. We held that Quiroz thus invoked the rights listed in the waiver. Id. at 512. We could "see no good reason not to treat Quiroz's refusal to sign forms in the absence of counsel as a refusal that was coextensive with" the written waiver. Quiroz, Id. at 512 (emphasis added).

Quiroz is therefore one of those cases holding that, if a suspect both refuses to sign a waiver *and* indicates (either orally or by silence) that he does not wish to answer questions, his response constitutes an invocation of Miranda rights. See United States v. Heldt, 745 F.2d 1275, 1277 & n.3 (9th Cir. 1984) (valid invocation where the suspect refused to sign a waiver and told the officer he did not want to waive his rights or answer questions); United States v. Christian, 571 F.2d 64, 69 (1st Cir. 1978) (valid invocation where the suspect refused to sign a waiver but did sign a statement of rights).

By the same token, a suspect who refuses to sign a waiver, but nevertheless acts in a manner inconsistent with invocation of his rights, has signified an implicit waiver.

8

See <u>United States v. House</u>, 939 F.2d 659, 662-63 (8th Cir. 1991) (suspect's decision to answer questions after refusing to sign a written waiver constituted an implicit waiver, rather than an invocation, of his <u>Miranda</u> rights); <u>United States v. Boon San Chong</u>, 829 F.2d 1572, 1574 (11th Cir. 1987) (suspect's decision to answer certain questions after reading an advice of rights form constituted a waiver of his <u>Miranda</u> rights, notwithstanding his refusal to sign a written waiver).

Taken together, these cases support the overall principle that the circumstances matter, and that refusal to sign a waiver form is a sign that is informed by context. The majority opinion is therefore a departure, holding as it does that a suspect's refusal to sign a written waiver constitutes an invocation of rights regardless of anything else the suspect may say or do. However, "[a] refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstances of custody." <u>Goodwin v. Johnson</u>, 224 F.3d 450, 456 (5th Cir. 2000) (quoting <u>United States v. McDaniel</u>, 463 F.2d 129, 135 (5th Cir. 1979)).

If a suspect's refusal to sign a written waiver can be

9

enough to bar police from asking any further questions, regardless of whether the suspect is willing to talk to police, then police will simply stop using written waiver forms. Why take the risk that a suspect won't want to put pen to paper? The result will be a return to the very confusion and uncertainty regarding a suspect's invocation of rights that written waivers were designed to overcome. Nothing in Quiroz compels such a result.

**IV**

The majority opinion creates a second novelty in the law: that Miranda rights can be invoked ambiguously. This conflicts with Davis, which holds that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney," and that "[i]f the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect." Davis, 512 U.S. at 458.

The majority distinguishes Davis on the ground that it involved a re-invocation--that is, a suspect's invocation

10

following his initial waiver. Davis did involve a re-invocation, but the Supreme Court did not limit Davis to its facts or context. The majority quotes some language in Davis (Maj'y Op at 18-19) as "implying that [Davis'] application is limited to situations in which a custodial officer has already begun interrogation after a valid waiver." I read the cited language to reflect the reality that police often begin to question a suspect before the circumstances warrant a Miranda warning. Davis applies, as Davis says, "at any time during the interview." Davis, 512 U.S. at 458; see also McNeil v. Wisconsin, 501 U.S. 171, 178 (1991) (the Edwards prophylactic rule "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police" (emphasis omitted)); Smith v. Illinois, 469 U.S. 91, 94-95 (1985) (application of the Edwards prophylactic rule requires a court to "determine whether the accused actually invoked his right to counsel" (emphasis added)).

A Ninth Circuit panel has suggested that Davis is limited to post-waiver cases. United States v. Rodriguez, 518 F.3d 1072, 1078-79 (9th Cir. 2008) ("[T]he 'clear

11

statement' rule of Davis addresses only the scope of invocations of Miranda rights in a post-waiver context."). But a majority of the circuits have applied Davis in pre-waiver cases. See United States v. Johnson, 400 F.3d 187, 194-95 (4th Cir. 2005) (applying Davis to a pre-waiver statement); United States v. Lee, 413 F.3d 622, 626 (7th Cir. 2005) (same); United States v. Brown, 287 F.3d 965, 972-73 (10th Cir. 2002) (same); United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002) (same); United States v. Suarez, 263 F.3d 468, 482-83 (6th Cir. 2001) (same); Grant-Chase v. Comm'r, New Hampshire Dep't of Corr., 145 F.3d 431, 436 & n.5 (1st Cir. 1998) (same); United States v. Posada-Rios, 158 F.3d 832, 867 (5th Cir. 1998) (same).

"The fundamental purpose of the [Supreme Court's] decision in Miranda was 'to assure that the individual's right to choose between speech and silence remains unfettered throughout the interrogation process.'" Connecticut v. Barrett, 479 U.S. 523, 528 (1987) (emphasis added) (quoting Miranda, 384 U.S. at 469). Once Miranda warnings are given, the law has no preference as between invocation and waiver. "Once warned, the suspect is free to exercise his own volition in deciding whether or not

12

to make a statement to the authorities." <u>Oregon v. Elstad</u>, 470 U.S. 298, 308 (1985) (emphasis added). In short, it is the suspect's choice--and therefore his initiative--to invoke his rights. We must "presume that a defendant did not waive his rights" absent evidence to the contrary, <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979); but if the government can prove that the defendant did not make that choice "sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be" an invocation, <u>Davis</u>, 512 U.S. at 458, neither <u>Miranda</u> nor its progeny require the suppression of any subsequent statements.

I would reverse.