MURGUIA, Circuit Judge,
with whom KOZINSKI, Chief Judge, and SILVERMAN, CALLAHAN, and IKUTA, Circuit Judges, join, dissenting:
I respectfully dissent. The majority invalidates a conviction on the ground that the state court reached a decision that was contrary to and an unreasonable application of clearly established federal law. According to the majority, the California Court of Appeal unreasonably applied Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), to the pre-waiver context. But the majority eschews the high level of deference we owe a state court under the Antiterrorism and Effective Death Penalty Act (“AEDPA”), 28 U.S.C. § 2254. A federal habeas court may not grant relief unless no reasonable jurist could agree with the state court’s determination. See Harrington v. Richter, - U.S. -, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011). On the record before us, a reasonable jurist could conclude not only that the Davis standard applies to p:re-Miranda statements, but also that Sessoms’s request was ambiguous and equivocal. I would, therefore, affirm the district court’s judgment denying relief.
*1065 I
Before the police read him his Miranda rights, Sessoms said, “There wouldn’t be any possible way that I could have a — a lawyer present while we do this? Yeah, that’s what my dad told me to ask you guys ... uh, give me a lawyer.” The majority holds the state court reached a decision that was contrary to and an unreasonable application of clearly established federal law in concluding that if Sessoms wanted the officers to stop the interrogation, he had to make a clear request for counsel as required by Davis. Under AEDPA, Sessoms is only entitled to relief if the state court unreasonably applied “clearly established federal law.” 28 U.S.C. § 2254(d)(1). “Clearly established Federal law” refers to the holdings, not the dicta, of the Supreme Court as of the time of the relevant state court’s decision. Lockyer v. Andrade, 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The Supreme Court has never held that an ambiguous request for counsel was enough to stop an interrogation. When the Supreme Court has had occasion to consider the issue, it has either expressly declined to reach it, Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), or held that only an unambiguous invocation requires police to terminate the interrogation. Davis, 512 U.S. at 460-61, 114 S.Ct. 2350; Berghuis v. Thompkins, — U.S. -, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010).
In Smith, the Supreme Court did not address the consequences of an ambiguous inquiry about counsel, because the invocation in that case was clear. 469 U.S. at 99-100, 105 S.Ct. 490 (“We do not decide the circumstances in which an accused’s request for counsel may be characterized as ambiguous or equivocal.... ”). The Court found it unnecessary to resolve the conflict in the lower courts on this point. Thus, Smith confirmed that the consequences of an ambiguous request for counsel was an unsettled question in Miranda’s wake, and that there was no established law on point.
When the Supreme Court did reach the question in Davis, it held that “if a suspect makes a reference to an attorney that is ambiguous or equivocal ... our precedents do not require the cessation of questioning. Rather, the suspect must unambiguously request counsel.” 512 U.S. at 459, 114 S.Ct. 2350 (emphasis added). In expounding this rule, the Court in Davis reasoned that “when the officers conducting the questioning reasonably do not know whether the suspect wants a lawyer, a rule requiring the immediate cessation of questioning ‘would transform the Miranda safeguards into wholly irrational obstacles to legitimate police investigative activity.’ ” Id. at 460, 114 S.Ct. 2350 (quoting Michigan v. Mosley, 423 U.S. 96, 102, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975)). In applying this reasoning to the facts of the case, the Davis court held that “after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney.” Id. at 461, 114 S.Ct. 2350. While the Court noted that this rule (requiring a suspect to clearly request an attorney) applied to situations where the suspect had waived Miranda rights, the Court did not specifically address whether or not the rule’s applicability was confined to that period. Thus, it was not contrary to established law or unreasonable for the California Court of Appeal to apply the Davis rule to Sessoms’s case.
In fact, the Supreme Court has recently confirmed that Davis’s reasoning applies equally in the pre-waiver context. Berghuis, 130 S.Ct. at 2260; see also United States v. Plugh, 648 F.3d 118, 124-25 (2d Cir.2011) (applying Davis to the pre-waiv *1066 er context in light of Berghuis); United States v. Doe, 170 F.3d 1162, 1166 (9th Cir.1999) (applying Davis where defendant asked about an attorney “before being read his Miranda rights, before being interrogated and even before biographical questioning”). The Berghuis Court, without qualification, held: “If an accused makes a statement concerning the right to counsel ‘that is ambiguous or equivocal’ or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her Miranda rights.” 130 S.Ct. at 2259-60 (quoting Davis, 512 U.S. at 461-62, 114 S.Ct. 2350). The Court reiterated the practical considerations underlying the rule:
There is good reason to require an accused who wants to invoke his or her [Miranda rights] to do so unambiguously. A requirement of an unambiguous invocation of Miranda rights results in an objective inquiry that avoid[s] difficulties of proof and ... provide[s] guidance to officers on how to proceed in the face of ambiguity. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused’s unclear intent and face the consequence of suppression if they guess wrong. Suppression of a voluntary confession in these circumstances would place a significant burden on society’s interest in prosecuting criminal activity.
Id. at 2260 (citations and internal quotation marks omitted). Although Berghuis had not been decided at the time the state court ruled on Sessoms’s claims, the holding confirms that it was not unreasonable for the California Court of Appeal to apply Davis in this case.
The majority relies upon excerpted sentences from Miranda-related precedent to suggest there is a Supreme Court rule that says: Any statement by a suspect that could be interpreted as a request for a lawyer is an invocation of the right to counsel. The majority then suggests that the rulings in Davis and Berghuis carved out narrow exceptions to this “rule.” But the Supreme Court has never held that an ambiguous statement or question regarding counsel is enough to stop an interrogation. While Miranda established that a suspect could stop the questioning by “indicat[ing] in any manner and at any stage of the process that he wishes to consult with an attorney before speaking,” Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the decision did not address what the police were supposed to do when the suspect’s “indication” was ambiguous.
Similarly, Edwards v. Arizona, which held that a suspect cannot be subjected to further questioning once he has “expressed his desire to deal with the police only through counsel,” says nothing about what constitutes a sufficient expression of that desire. 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). Rather, Edwards said that authorities may not continue to interrogate a suspect who “has clearly asserted his right to counsel.” Id. at 485, 101 S.Ct. 1880 (emphasis added). This language suggests that an unambiguous statement is required. See Davis, 512 U.S. at 460, 114 S.Ct. 2350 (citing to this portion of Edwards to support point that assertion must be clear and unambiguous). Edwards, of course, does not provide much guidance on the issue of ambiguity, because the suspect in that case plainly stated, “I want an attorney before making a deal.” Id at 479, 101 S.Ct. 1880.
When the Supreme Court in McNeil v. Wisconsin said that an invocation of the right to counsel “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing *1067 with custodial interrogation by the police,” 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), it was explaining why-requesting legal representation for a bail hearing would not preclude a subsequent police interrogation. McNeil did not set out the standard for assessing a suspect’s ambiguous inquiry about counsel at the start of a custodial interrogation, as the majority implies.
The majority also suggests that its reliance on McNeil is supported by Davis, stating:
When there has not been a knowing and voluntary waiver, “[invocation of the Miranda right to counsel ‘requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney,’ ” Davis, 512 U.S. at 459, 114 S.Ct. 2350 (quoting McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)), but the assertion need not be “unambiguous or unequivocal,” id. at 462, 114 S.Ct. 2350.
Maj. Op. at 1061. In addition to misconstruing McNeil, this passage turns Davis on its head. Nowhere in Davis is there any statement suggesting that “the assertion need not be ‘unambiguous or unequivocal.’ ” Indeed, this is made clear by the very next line in Davis:
Invocation of the Miranda right to counsel “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.” McNeil v. Wisconsin, 501 U.S., at 178 [111 S.Ct. 2204]. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.
Davis, 512 U.S. at 459, 114 S.Ct. 2350 (emphasis added). The problem with the majority’s analysis becomes even more apparent looking at the entire sentence from which it selectively lifts “unambiguous or unequivocal”: “If the suspect’s statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him.” Id. at 461-62, 114 S.Ct. 2350. This sentence in no way supports the majority’s statement that “the assertion need not be ‘unambiguous or unequivocal.’ ” The Supreme Court has never held, in Davis or in any case, that an ambiguous or equivocal statement regarding an attorney is sufficient to invoke a suspect’s right to counsel.
The majority criticizes the state court for applying Davis in this case because Sessoms had not been read his Miranda rights before he referenced a lawyer. Cf. United States v. Doe, 170 F.3d at 1166 (holding that “a statement concerning an attorney made before interrogation begins is far less likely to be a request for attorney assistance during interrogation than a similar statement made during custodial interrogation”). The majority points to the emphasis in Davis and Berghuis on the protection provided by the Miranda warnings, as grounds for requiring a lower standard of clarity in the pre-Miranda context. Davis, 512 U.S. at 460-61, 114 S.Ct. 2350; Berghuis, 130 S.Ct. at 2260; but see United States v. Doe, 170 F.3d at 1166. But here, after Sessoms referenced a lawyer, the detective read Sessoms his Miranda rights. Thus, Sessoms was Mirandized after he asked about a lawyer, and, as such, was expressly advised of his right to counsel. It was only after that advisement and Sessoms’s waiver that the police questioned him.
The majority asserts that the waiver only occurred because the seasoned detective, aware that Sessoms might want a *1068 lawyer, used the brief time before he read Sessoms his Miranda rights to pressure him into waiving them. Sessoms, however, does not claim he was improperly coaxed into waiving his Miranda rights; instead, he claims that he invoked his right to counsel. And because the policy considerations emphasized by the Supreme Court in Davis and Berghuis apply equally before and after the Miranda rights have been read, it was not unreasonable for the state court to require an unambiguous request for counsel in this case.
Finally, and most importantly, the Supreme Court has never held that a different standard applies prior to the reading of the Miranda rights. “ ‘[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.’ ” Harrington, 131 S.Ct. at 786 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009)).
In these circumstances, I cannot conclude that the California Court of Appeal reached a decision that was contrary to or an unreasonable application of clearly established federal law in ruling that only an unambiguous invocation of the right to counsel would have required the detectives to stop Sessoms’s interrogation. See Wright v. Van Patten, 552 U.S. 120, 126, 128 S.Ct. 743, 169 L.Ed.2d 583 (2008) (“Because our cases give no clear answer to the question presented, let alone one in [petitioner’s] favor, it cannot be said that the state court unreasonably applied clearly established Federal law.” (citations and internal quotation marks omitted)); Carey v. Musladin, 549 U.S. 70, 77, 127 S.Ct. 649, 166 L.Ed.2d 482 (2006) (“Given the lack of holdings from this Court ... it cannot be said that the state court unreasonably applied clearly established Federal law.”) (alterations and internal quotation marks omitted); Yarborough v. Alvarado, 541 U.S. 652, 666-67, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) (holding that court was nowhere close to the mark in ruling that the state court had unreasonably applied established federal law by failing to consider a suspect’s age when determining custodial status, where “[the Supreme Court’s] opinions applying the Miranda custody test have not mentioned the suspect’s age, much less mandated its consideration”); DeWeaver v. Runnels, 556 F.3d 995, 1002 (9th Cir.2009) (“We ... could not conclude that application of the Davis rule to an invocation of the right to remain silent is contrary to or an unreasonable application of Supreme Court precedent where the Supreme Court has neither squarely addressed when an ambiguous statement amounts to an invocation of the right to remain silent nor refused to extend the Davis rule to an invocation of the right to remain silent.” (alterations and internal quotation marks omitted)).
II
Having determined that it was not unreasonable to apply Davis in this case, I also consider whether the state court was objectively unreasonable in concluding that Sessoms’s statement was not an unambiguous request for counsel. Even if I would have decided differently had I been on the California Court of Appeal, the law is clear that “a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly.” Woodford v. Visciotti, 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002). Our review is constrained, sometimes painfully so, by AEDPA, which “preserves authority to issue the writ in cases where there is no possibility fair-minded jurists could disagree that the state court’s decision conflicts with [the *1069 Supreme] Court’s precedents. It goes no farther.” Harrington, 131 S.Ct. at 786.
Davis provides: “[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning.” 512 U.S. at 459, 114 S.Ct. 2350. In this case, Sessoms first asked, “There wouldn’t be any possible way that I could have a, a lawyer present while we do this?” The California Court of Appeal concluded that a reasonable police officer could have interpreted Sessoms’s first question as asking only whether he was allowed to have a lawyer present, rather than actually requesting a lawyer. When reviewing a habeas petition from a state court, this Court “must determine what arguments or theories supported, or ... could have supported, the state court’s decision; and then [we] must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court].” Harrington, 131 S.Ct. at 786.
The state court decision was not an objectively unreasonable application of Davis. Sessoms’s question, punctuated with hesitation, conditions, and phrased in the negative, is subject to different interpretations and comparable to statements that this Court and other courts have found ambiguous. Compare Davis, 512 U.S. at 455, 114 S.Ct. 2350 (“Maybe I should talk to a lawyer.”); United States v. Younger, 398 F.3d 1179, 1187 (9th Cir. 2005) (“[B]ut, excuse me, if I am right, I can have a lawyer present through all this, right?”); Clark v. Murphy, 331 F.3d 1062, 1065 (9th Cir.2003) (“I think I would like to talk to a lawyer.”), overruled on other grounds by Lockyer, 538 U.S. 63, 123 S.Ct. 1166; United States v. Doe, 170 F.3d at 1166 (“What time will I see a lawyer?”); Diaz v. Senkowski 76 F.3d 61, 63-65 (2d Cir.1996) (“I think I want a lawyer.”); Lord v. Duckworth, 29 F.3d 1216, 1218-21 (7th Cir.1994) (“I can’t afford a lawyer but is there any way I can get one?”); with Anderson v. Terhune, 516 F.3d 781, 783 (9th Cir.2008) (en banc) (“I plead the fifth.”); Edwards, 451 U.S. at 479, 101 S.Ct. 1880 (“I want an attorney before making this deal.”).
Sessoms also followed up his question with this statement: “That’s what my dad told me to ask you guys ... uh, give me a lawyer.” It is unclear from this statement if Sessoms is merely expressing his father’s opinion or if he is agreeing with his father and he himself wants an attorney. Either interpretation is plausible. A reasonable jurist could conclude that telling a detective “My dad told me to ask for a lawyer” is different than saying “I want an attorney.” Because it cannot be said that no reasonable jurist would find either of Sessoms’s statements, viewed individually or together, to be ambiguous and equivocal, relief is barred by AEDPA.
The majority points to the detective’s reaction to Sessoms’s question as evidence that the detective believed Sessoms invoked his right to counsel. The officer stammered and, the majority claims, proceeded to persuade Sessoms to waive his right to counsel. The detective’s reaction, however, could easily have been that of an officer faced with a suspect who only might have invoked his right to counsel and relayed his father’s advice at the start of an interrogation. The detective’s answer supports this theory:
Uh, I want to back up to your question you asked about an attorney. Um, first, before you ask questions, uh, I’m going to tell you why we’re here, just lay it out and be up front. And then — then I’m going to advise you of your rights. And *1070 then it’s up — for you to decide if you want the attorney or not.
The majority believes the officers should have answered Sessoms’s question by simply saying “yes” and terminating the interrogation. The majority claims that in the brief exchange before Sessoms was read his Miranda rights, the detective manipulated Sessoms into waiving his right to counsel. Again, however, Sessoms is not claiming that he was pressured into an involuntary waiver, but only that he asked for counsel, which should have terminated the interrogation. “[T]he likelihood that a suspect would wish counsel to be present is not the test for applicability of Edwards.” McNeil, 501 U.S. at 178, 111 S.Ct. 2204. Unless Sessoms clearly invoked his right to counsel, the police officers were not required to take any particular course of action in response to his statements or questions. See Davis, 512 U.S. at 460, 114 S.Ct. 2350. As such, the majority’s focus on the detective’s reaction at that stage is misplaced.
I acknowledge that this reasoning results in a harsh outcome for a nineteen-year-old who turned himself in, expressly told the officers that his father wanted him to have a lawyer, and may have been trying to be respectful when asking for counsel. However, when it set out the rule in Davis, the Supreme Court understood and accepted that a strict rule would disadvantage certain individuals who wanted counsel:
We recognize that requiring a clear assertion of the right to counsel might disadvantage some suspects who — because of fear, intimidation, lack of linguistic skills, or a variety of other reasons — will not clearly articulate their right to counsel although they actually want to have a lawyer present.
Davis, 512 U.S. at 460-61, 114 S.Ct. 2350. The law is clear.
Could the police officers have assumed that Sessoms was in fact asking for a lawyer? Yes. Was it objectively unreasonable for the California Court of Appeal to hold that a police officer could have interpreted Sessoms’s statement as a possible request for a lawyer rather than an actual request for a lawyer, which would not require the officer to stop the interrogation? I cannot say that it was. Because this Court is constrained by the deference mandated by AEDPA, even when faced with a close case where it may have ruled differently than the state court, I respectfully dissent.