11-1617-cr
USA v. Dawes

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of September, two thousand twelve.

Present:
> ROBERT A. KATZMANN,
> ROBERT C. WESLEY,
> PETER W. HALL,
> > *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                    No. 11-1617-cr

BARRINGTON DAWES, also known as WINSTON LEE, also known as CLIFFORD BRYAN, also known as ANTHONY JOHN LEE, also known as IVAN J. HEYWARD, also known as JOHN NEIL,

> *Defendant-Appellant.*[*]

---

For Defendant-Appellant:       NORMAN TRABULUS, New York, N.Y.

For Appellee:                             CRISTINA M. POSA (Peter A. Norling, Susan Corkery, *on the brief*), Assistant United States Attorneys, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y.

---

[*]The Clerk of the Court is directed to amend the caption as noted.

Appeal from the United States District Court for the Eastern District of New York (Ross, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendant-Appellant Barrington Dawes -- also known as Winston Lee, also known as Clifford Bryan, also known as Anthony John Lee, also known as Ivan J. Heyward, also known as John Neil ("Defendant") -- appeals from a judgment entered on April 25, 2011 by the United States District Court for the Eastern District of New York (Ross, *J.*) convicting him, following a jury trial, of illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a)(b)(2) (Count One); aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1), (b), and (c)(10) (Count Two); and making false statements, in violation of 18 U.S.C. § 1001(a)(2) (Count Three).[1]  On appeal, Defendant argues, *inter alia*, that (1) the district court erred in denying Defendant's motion to suppress his prior videotaped statements; (2) it was plain error for the district court to admit the conclusions of certain actors that Defendant was an alien subject to deportation; (3) trial counsel was constitutionally ineffective; and (4) Defendant's conviction on the false statement count must be vacated.  We assume the parties' familiarity with the facts and procedural history of this case.

Defendant first argues that the district court erred in denying his motion to suppress his prior videotaped statement that his "home" was "Kingston, Jamaica," App. 101, a statement

---

[1] The first two counts required the government to prove, among other things, that Defendant was not an United States citizen.  *See* 8 U.S.C. § 1326 (providing that an alien found in the United States after having been deported following a conviction for an aggravated felony, without having obtained permission to return, is subject to criminal penalties); 18 U.S.C. § 1028A(a)(1), (c)(10) ("Whoever, during and in relation to any felony violation [of any provision contained in chapter 8 of title II of the Immigration and Nationality Act], knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.").

Defendant argues was taken in violation of his Fifth Amendment rights. "The standard of review for evaluating the district court's ruling on a suppression motion is clear error as to the district court's factual findings, viewing the evidence in the light most favorable to the government, and *de novo* as to questions of law." *United States v. Rodriguez*, 356 F.3d 254, 257 (2d Cir. 2004).

The videotape at issue depicts a July 13, 1986 interrogation of Defendant by an Assistant District Attorney ("ADA") on an unrelated charge. At the beginning of the interview, Defendant twice said, "I plead the Fifth Commandment." App. 87. Immediately after the second statement, however, Defendant said, "I want to know why I'm here." *Id.* In response, Defendant was advised of his *Miranda* rights, and he acknowledged that he understood them. During the ADA's recitation of Defendant's rights, Defendant repeatedly tried to interject by offering exculpatory statements, but the ADA stopped him from speaking any further until the reading was complete. Only then did the ADA ask, "Now that you have been advised of your rights, do you wish to speak to me?" Defendant responded: "Yes, sir." App. 91.

Following a discussion regarding the unrelated charge, the ADA announced that he had finished his questioning. At that point, Defendant began asking the ADA questions. He then stated, "[S]o listen, I -- like I said, I'm fed up with this country and I rather to be home [sic]." *Id.* at 101. After being asked, "Where is home?," Defendant responded, "Kingston, Jamaica. . . . I'd rather to go home to my parents cause I have no rights in this country." App. 101. The videotape is approximately thirty-eight minutes in duration, and for more than half of that time Defendant was asking questions and making demands of the ADA while the ADA repeatedly tried to stop the interview.

In *Miranda v. Arizona*, the Supreme Court made clear that the prosecution may not use statements made by a suspect under custodial interrogation unless the suspect (1) has been

3

apprised of his Fifth Amendment rights, and (2) knowingly, intelligently, and voluntarily waives those rights. 384 U.S. 436, 444-45 (1966). To invoke either the right to counsel or the right to remain silent, the suspect must do so "unambiguously," meaning that the suspect "must articulate his desire . . . sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be [an invocation of the right]." *See Davis v. United States*, 512 U.S. 452, 459 (1994); *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2260 (2010) (applying to the invocation of the right to remain silent the same principles outlined in *Davis* for the invocation of the right to counsel because there was no principled reason for different standards since "[b]oth protect the privilege against compulsory self-incrimination by requiring an interrogation to cease when either right is invoked") (internal citation omitted). Thus, an "ambiguous or equivocal act, omission, or statement" does not constitute an invocation of *Miranda* rights. *Id.* Further, consistent with *Berghuis*, we have held "that for a defendant to invoke either the right to remain silent or the right to counsel, he must do so unambiguously." *United States v. Plugh*, 648 F.3d 118, 128 (2d Cir. 2011). If a suspect makes an "ambiguous or equivocal" statement "or makes no statement," then "the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis*, 130 S. Ct. at 2259-60 (internal quotation marks and citations omitted).

In this case, Defendant did not unambiguously invoke his Fifth Amendment rights. Although Defendant mentioned the "Fifth Commandment" before the interrogation began, this reference cannot be construed as an unequivocal invocation of the Fifth Amendment in light of Defendant's nearly simultaneous comments and conduct. Defendant may have stated, "I plead the Fifth Commandment," but he immediately queried, "I want to know why I'm here," indicating thereby he had not unequivocally asserted his Fifth Amendment rights. Defendant's insistence on

4

speaking to the ADA, even during the ADA's recitation of his *Miranda* rights, negates any inference that Defendant intended to invoke his rights when he mentioned the "Fifth Commandment." *See, e.g.*, *Bradley v. Meachum*, 918 F.2d 338, 342 (2d Cir. 1990) (holding that the defendant did not invoke his Fifth Amendment rights when a "hearing revealed that [the defendant's] statement that he was not going to say whether he was involved in the crime was part of an ongoing stream of speech which included a subsequent denial of his involvement in the [crime]"); *Barnes v. Johnson*, 160 F.3d 218, 225 (5th Cir. 1998) (reasoning that defendant's response of "no" when asked if willing to waive right to remain silent did not mandate suspension of interrogation; ambiguity entitled police to explore if the defendant understood term "waiver" and then, after learning that the defendant did not and in fact wanted to talk, to conduct the interview).

We turn next to Defendant's assertion that the district court erred by admitting the "conclusions" of a government agent and an Immigration and Naturalization Services office that Defendant was an alien subject to deportation, and by admitting evidence concerning the circumstances of Defendant's deportation that went "far beyond" what was necessary to prove that Defendant had actually been deported. Because Defendant's trial counsel did not object to any of the evidentiary issues now raised on appeal, "plain error" review applies. *United States v. Simels*, 654 F.3d 161, 168 (2d Cir. 2011). Under this standard of review, we can only remedy an "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (alteration in original) (internal quotation marks omitted). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* (alteration in original) (internal quotation marks omitted). Should this Court notice plain error,

5

the burden is on the defendant to show "'a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different.'" *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004) (alteration in original) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Here, we need not decide whether the district court erred in admitting the particular pieces of evidence cited by Defendant because he has not shown that the exclusion of this evidence would have "affected the outcome of the district court proceedings." *United States v. Thomas*, 274 F.3d 655, 668 (2d Cir. 2001) (en banc) (internal quotation marks omitted). Defendant's primary argument is that, without this evidence, there was insufficient proof of Defendant's alienage. Defendant is incorrect. Even without this evidence, the proof of Defendant's alienage was overwhelming. For example, Defendant admitted in the videotape discussed above that his "home" was "Kingston, Jamaica"; Defendant admitted to Immigration and Customs Enforcement ("ICE") Special Agent Karen Pace orally and in writing that he was a citizen of Jamaica; and ICE Special Agent Ricardo McDonald, who was born in Jamaica, testified that Defendant spoke with a slight Jamaican accent. In light of Defendant's own admissions, he cannot show a reasonable probability that, but for the admission of certain additional items of evidence, the result of the proceeding would have been different.

Defendant's argument that his trial counsel was constitutionally ineffective is similarly unavailing. In order to prevail on an ineffective assistance of counsel claim, a defendant or petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). In evaluating whether counsel's performance was

6

deficient, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (quoting *Strickland*, 466 U.S. at 690). We "'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (alteration in original) (quoting *Strickland*, 466 U.S. at 689). In evaluating whether the proceeding would have been different but for counsel's error, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792.

Defendant's principal contention is that a different theory of the case, presented for the first time on appeal by Defendant's new appellate counsel, would have been more effective than the strategy trial counsel actually pursued. However, the question is not whether an attorney's strategy was the *most effective* of all possible alternatives, but rather "whether an attorney's representation amounted to incompetence under prevailing professional norms." *Id.* at 788 (internal quotation marks omitted). In this case, trial counsel's strategy was objectively reasonable and certainly did not amount to incompetence. As the district court found, trial counsel was faced with "an uncontested finding of defendant's competency to stands [sic] trial coupled with defendant's undisputed insistence that he take the stand and represent to the jury that he is in fact the individual whom his false identification purported him to be; that is, a United States citizen named Ivan Heyward." App. 281. Under these circumstances, as the district court found, "[trial] counsel made the strategic decision to advance a defense that attacked the sufficiency of the government's proof to establish the essential elements of the crimes charged beyond a

reasonable doubt, without attacking the honesty or credibility of her own client, who had presented himself, and his story, directly to the jury in his testimony." App. 281. We cannot say that this choice was objectively unreasonable.

Finally, Defendant argues that his conviction for making a false statement should be vacated. However, as Defendant acknowledges, this argument is explicitly premised on the success of Defendant's second argument, namely, that "reversible error tainted the evidence of alienage." Def.'s Reply Br. 16-17. Because we have concluded, for the reasons explained above, that there was no reversible error with respect to the evidence of alienage, Defendant's final argument must necessarily fail as well.

We have considered Defendant's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.


FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

8